**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE DRAPER,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:13-CV-01039-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

Plaintiff Janice Draper, by her attorneys, Law Offices of Lawrence D. Rohlfing, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. § 301 *et seq.* This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c). The matter is before the Court on the parties' cross-briefs, which were submitted without oral argument to the Honorable Sandra M. Snyder, U.S. Magistrate Judge. Following a review of the complete record and applicable law, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence.

# BACKGROUND

## I. Procedural History

On December 16, 2009, Plaintiff applied for supplemental security income. Plaintiff alleges onset of disability on January 1, 1995. The Commissioner initially denied the claims on May 11, 2010, and upon reconsideration again denied the claims on October 20, 2010. Plaintiff filed a timely request for a hearing on November 9, 2010.

On January 26, 2012, and represented by counsel, Plaintiff appeared and testified at a video hearing presided over by Michael Blume, Administrative Law Judge ("the ALJ"). *See* 20 C.F.R. 404.929 *et seq.* An impartial vocational expert, Gerald Belchick, Ph.D., also appeared and testified.

On February 6, 2012, the ALJ denied Plaintiff's application. The Appeals Council denied review on May 1, 2013. On July 5, 2013, Plaintiff filed a complaint seeking this Court's review.

## II. Administrative Record

A. Plaintiff's Testimony (January 26, 2012)

Plaintiff, born December 9, 1964, lived in an upper floor apartment with her disabled nephew (age 11 at the time of the hearing). Plaintiff completed high school, attended some college, and is able to communicate in English. Plaintiff testified that she last worked in 2008 as a home health care provider caring for her mother, had prior work as a telemarketer in 2007-08, and as a telephone secretary in 1998. Plaintiff testified that she had not worked since 2008.

Plaintiff alleged onset of disability in January 1995, and testified that she has pain in her hip, knees, lower back, and upper shoulders. She testified that her doctors tell her that "there's nothing they can really do." Plaintiff described her typical daily activities as follows:

> I get up, get my nephew ready for school, and then I might lay back down for a little while and then I'll get up and wash some clothes or do a little cleaning the house and then I might sit down for a minute. And then I'll maybe start my dinner or something. I just take breaks throughout the day – just normal household chores or I might go outside and visit with my neighbors.

Plaintiff testified that due to her previous hip surgery where her doctors "had to reconnect and put bolts and screws and stuff up in my leg," her right leg is shorter causing her to "wobble" and "sometimes fall." She estimated that she bumps herself "every day" and falls "at least maybe once a month." Plaintiff testified that she managed her self-care, but has difficulty washing her right foot and tying her shoes, gets out of breath while dressing, and sometimes needs assistance to get out of the bathtub. Plaintiff reported that she was able to grocery shop and use public transportation without assistance. Plaintiff stated that although her medication made her sleepy, she did "not really" sleep during the day. Instead, she testified that she rested "maybe two hours at the most" every day. Plaintiff testified that she did not drive, but used the bus and "got rides."

To manage her pain, Plaintiff reported taking over-the-counter medications as well as having prescriptions for Oxycodone, Soma, Norco, and Vicodin. She reported taking Soma daily, and using Oxycodone, Norco, and Vicodin "according to the pain." She stated she also had a prescription "like arthritis pills," which she used to treat inflammation. She testified that she experienced side effects from her medications, such that she has stomach problems, drowsiness, and sluggishness. Describing the effects of Oxycodone, she stated that it "knocks her out," and that Norco permitted her to concentrate for only five or ten minutes at a time. Plaintiff testified that her pain management physician, Dr. Jose Flores, recommended that she exercise, climb the stairs to her apartment, suggested that she "ride a bike," and encouraged her to "walk, walk." Plaintiff estimated that she could stand for five to ten minutes before she had to rest for rest, sit for twenty minutes, walk "about four blocks," and could lift approximately ten pounds. She testified that she sometimes used a cane, but disliked doing so. She testified that she cannot climb a ladder or kneel, and has problems when reaching overhead. Plaintiff testified she was five foot three inches tall and weighed 185 pounds.

B. Medical Evidence

The ALJ properly considered the following medical records and opinions. As the ALJ noted, the medical findings in this case are sparse; no treating or examining physician rendered an opinion

3

as to the Plaintiff's abilities. The objective medical evidence confirmed the diagnosis of status post open reduction internal fixation of the right femur, healed, with residual chronic lumbar strain/sprain; obesity; and depressive disorder not otherwise specified. There are minimal treatment records.

In medical records from December 2009, treating physician Hing Luong, M.D., diagnosed Plaintiff with right hip bursitis. X-rays of the right femur and right hip from April 2010, showed evidence of an internal fixation plate and screws within the femur for an old healed fracture, but no other acute abnormalities, with the hip joints maintained bilaterally. In July 2010, when Plaintiff complained of increasing intermittent aching pain in the right hip and increased pain with certain hip movements, Dr. Luong confirmed his previous diagnosis of hip bursitis.

At the request of the state agency, consultative orthopedist Dale Van Kirk, M.D., examined the Plaintiff in February 2010. He observed that Plaintiff sat comfortably in her chair, had no problems getting out of the chair, walking around the examination room, or getting on and off the examination table. Dr. Van Kirk further observed that she had no limp, her Romberg testing was normal, her tandem walking with one foot in front of the other was satisfactory, and she was able to get up on her toes and heels. Dr. Van Kirk noted that Plaintiff exhibited minimal pain in the mid-lumbar spine area, had an exaggerated lordotic posture of the lower back, slight pain in the right paralumbar soft tissues, and 70° out of 90° back flexion. The doctor noted that Plaintiff had no motion limitation in the knees, ankles, shoulders, elbows, or wrists, had a normal range of motion in the left hip, but a limited range of motion in the right hip. Her straight leg raising test was 90°-90° bilaterally in the sitting and supine positions; her motor strength was normal; and sensory exam was normal, except she had slight hypoesthesia around the knee scar on the right thigh. Dr. Van Kirk diagnosed right femur fracture status post ORIF, healed, with residuals, and chronic lumbosacral musculoligamentous strain-sprain.

In August 2010, Plaintiff began treatment with Pain Management & Family Medicine. At that time, Plaintiff reported bilateral knee and right hip pain. In September 2010, Jose Flores, M.D., noted a history of femur fracture with ORIF in the hip and femur. In November 2010, when Plaintiff reported right leg pain, Dr. Flores observed that Plaintiff had a leg length discrepancy. At a follow-up examination in December 2010, Plaintiff reported continuing hip pain, and Dr. Flores diagnosed osteoarthritis of the hips and fibromyalgia. In his notes between February 2011 and January 2012, Dr. Flores wrote that Plaintiff reported neck and low back pain with radicular symptoms.

In September 2010, consultative psychiatrist Ekram Michiel, M.D., examined Plaintiff at the request of the state agency. At the consultation, Dr. Michiel noted that Plaintiff was fairly groomed, casually dressed with adequate personal hygiene, walked with a limp, sat stooped with her head downcast, made intermittent eye contact throughout the interview, had normal speech, and normal general body movements. Plaintiff reported to him that she was depressed. Dr. Michiel observed that her affect was restricted and sad, her thought process was goal-directed, and her thought content was not delusional. Dr. Michiel also observed that Plaintiff's attention and concentration were fairly intact, that she was able to do simple math calculations, that her immediate memory was intact, her short-term and long-term memory slightly impaired, and her judgment fairly intact. Dr. Michiel assigned a GAF score of 55, indicating moderate difficulty in social or occupational functioning, and diagnosed depressive disorder not otherwise specified. Plaintiff was not receiving and had no history of mental health treatment or medications. The record contains no evidence of ongoing mental health treatment or counseling.

Medical records show that Plaintiff was obese. Records show she weighed 195 pounds and was five feet two inches tall with a body mass index of 35.7, where a BMI of 30 is considered obese.

C. Vocational Expert Testimony

Gerald Belchick, Ph.D., testified as vocational expert ("VE"). Dr. Belchick classified Plaintiff's past relevant work as a telemarketer as Specific Vocational Preparation ("SVP") level 2 –

sedentary exertional level, and her work as a telephone answering service operator as SVP level 3 – sedentary exertional level. Considering the demands of that work, the limitations of Plaintiff's residual functional capacity ("RFC"), and the Plaintiff's entire medical-vocational profile, Dr. Belchick testified that although a similarly capable individual would not be able to perform the demands of Plaintiff's previous telephone answering position because it is considered semiskilled work, one *would* be able to perform the demands of Plaintiff's previous telemarketer position as it is actually and generally performed. Dr. Belchick testified that there were also other positions that the hypothetically similar individual could perform, including a light and/or sedentary position of "cashier II," which required only simple, repetitive work. As to the "cashier II" position, Dr. Belchick reported that there were approximately 10,000 of these jobs available locally and 900,000 nationally.

## LEGAL STANDARD

An individual is considered disabled for purposes of disability benefits if she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§

6

404.1520 (a)-(f); 416.920 (a)-(f).  In the first-step analysis, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C .F.R. §§ 404.1520(b), 416.920(b).  If not, in the second step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If so, in the third step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments, 20 C.F.R. 404, Subpart P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If not, in the fourth step, the ALJ must determine whether the claimant has sufficient RFC, despite the impairment or various limitations to perform his past work.  *Id*. §§ 404.1520(f), 416.920(f).  If not, in step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy.  *Id*. §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§ 404 .1520, 416.920.

**DISCUSSION**

Plaintiff first challenges the ALJ's decision alleging that the ALJ's step-four finding was erroneous because it was based on vocational expert (VE) testimony that deviated from the Dictionary of Occupational Titles (DOT) and the ALJ did not obtain a reasonable explanation from the VE for the deviation.   Second, Plaintiff argues that the ALJ erred in his assessment of Plaintiff's credibility.  The Commissioner replies that the harmless error rule applies.  Moreover, the Commissioner contends that the ALJ did not err in finding Plaintiff's testimony regarding her symptoms and severity of her limitations less than fully credible because his findings were consistent with the objective evidence of record and the conservative treatment provided to Plaintiff.  For the reasons below, the Court finds that substantial evidence supports the ALJ's findings and harmless error principles apply.

7

## I.     The ALJ's Determination

Based on the weight of the medical opinions, the ALJ concluded that the Plaintiff's subjective complaints were greater than the objective findings and not consistent with the objective medical evidence.

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of December 16, 2009. Her severe impairments were status post open reduction internal fixation of the right femur, healed, with residual chronic lumbar strain/sprain; obesity; and depressive disorder not otherwise specified. None of these impairments alone or in any combination met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. The ALJ found that a restriction to the full range of sedentary work limited to simple repetitive tasks was consistent with the longitudinal medical record. In doing so, he considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ concluded that Plaintiff was capable of performing her prior work as a telemarketer, and she was able to perform the full range of sedentary work as defined in 20 C.F.R. § 404.967(a), limited to simple repetitive tasks. Accordingly, Plaintiff was not disabled as defined by the Social Security Act.

## II.    Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). If the ALJ applied the proper legal standards and the ALJ's findings are supported by substantial evidence, this Court must

uphold the ALJ's determination that the claimant is not disabled. *See, e.g., Ukolov v. Barnhart*, 420 F.3d 1002, 104 (9th Cir. 2005); *see also* 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch*, 400 F.3d at 679. Where the evidence as a whole can support either outcome, the Court may not substitute its judgment for the ALJ's, rather, the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**III.    Step-Four Analysis (Past Relevant Work)**

At step four of the sequential analysis, the ALJ relied on the VE's testimony to conclude that Plaintiff was capable of performing her past relevant work as a telemarketer, as well as other sedentary work that was limited to simple, repetitive tasks.

Plaintiff asserts that the ALJ's step-four finding was erroneous because the Dictionary of Occupational Titles ("DOT") indicates that a person performing a telemarketer job has "Level 3" reasoning skills, and she claims that her RFC limitations for simple repetitive tasks precludes such activity. Plaintiff further contends that because the ALJ did not obtain a reasonable explanation for the discrepancy from the VE, his step-four finding lacks the support of substantial evidence.

The Commissioner concedes that the ALJ did err at step four, but not for the reasons Plaintiff identified. Nevertheless, the Commissioner argues that the ALJ's error was harmless because his ultimate conclusion was correct and supported by a reasonable explanation. The Commissioner contends that Plaintiff's age, education and previous work experience direct a finding of not disabled under the Medical-Vocational Guidelines (also known as "the grids") and, notwithstanding Plaintiff's limitations, the VE identified an alternative job that Plaintiff could perform that exists in significant numbers in the national economy.

The record reflects that at step four, the ALJ relied on the VE's testimony that the telemarketer job has an SVP of 2 and that a person limited to simple repetitive tasks could be a

telemarketer because it was an unskilled position. *See* Social Security Ruling (SSR) 00-4p ("[U]nskilled work corresponds to an SVP of 1-2"). However, as classified by the DOT, telemarketer has an SVP of 3. *See* DOT 299.357-014. An SVP of 3 corresponds to semi-skilled work, not unskilled work. SSR 00-4p. Thus, the ALJ based his step-four finding on the erroneous premise that the telemarketing position was an unskilled SVP 2 job. The record does not included testimony regarding how Plaintiff actually performed her job. Therefore, the ALJ further erred in finding that Plaintiff could work as a telemarketer as she actually performed the job in the past.

For the following reasons, the Court finds the ALJ's step-four error is harmless because it does not "alter the outcome of the case." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'") (quoting *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). "The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights,' which is to say, not merely his procedural rights." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). A reviewing court must consider "an estimation of the likelihood that the result would have been different." *Id*. at 1055 (finding that "[t]he ALJ's decision, and the record of [claimant's] contradictions, make it plain that the ALJ would have reached the same conclusion" as to disability if the ALJ had not erroneously considered *ex parte* evidence).

Here, the ALJ's step-four error was harmless because even if Plaintiff cannot perform her past relevant work as a telemarketer, she can still perform "other substantial gainful work that exists in the national economy," and therefore is not disabled. 20 C.F.R. § 416.905(a). If Plaintiff is deemed unable to perform her past relevant work at step four, an ALJ proceeds to step five of the disability analysis to decide whether she can adjust to other work which "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c). To make this determination an ALJ may rely on the grids – a matrix that takes into consideration a claimant's RFC, age, work experience and

education. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). "When the grids match the claimant's qualifications, 'the guidelines direct the conclusion as to whether work exists that the claimant could perform.'" *Id*. (quoting *Heckler v. Campbell*, 461 U.S. 458, 462 (1983). For the grids to apply, Plaintiff must have the ability to perform unskilled work. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(b).

Unskilled work is that which requires little or no judgment to do simple duties that can be learned on the job in a short period of time and needs little specific vocational preparation. *See* 20 C.F.R. § 416.968(a); *see also* SSR 83-10. The basic mental demands of unskilled work include the ability to understand, carry out, and remember simple instructions. SSR 85-15. Here, the ALJ determined that Plaintiff could perform the full range of sedentary work, with a limitation to simple, repetitive tasks. The Ninth Circuit has not directly addressed the issue, although many district courts, including this one, have found that the grids are applicable at step five because a person restricted to simple, repetitive tasks can perform unskilled work. *See e.g. Beaupre v. Astrue*, 2012 WL 1435032 (E.D. Cal. Apr. 25, 2012) at *11-12 (concluding that claimant's restriction to simple repetitive tasks and entry level work "was not sufficiently severe to warrant departure from the grids"); *Ramsey v. Astrue*, 2012 WL 5499900 (E.D. Cal. Nov. 13, 2012) at *6 (affirming the ALJ's reliance on the grids because the claimant's RFC for simple repetitive tasks that do not involve more than occasional interaction with the public was "consistent with unskilled work"); *Sam v. Astrue*, 2010 WL 496718 (E.D. Cal. Dec. 1, 2010) at *11 (affirming the ALJ's reliance on the grids where Plaintiff was limited to simple, repetitive tasks because "[t]he ability to perform simple, repetitive tasks is consistent with unskilled work"); *Tapia v. Colvin*, 2014 WL 4655829 (C.D. Cal. Feb. 4, 2014) at *4 (collecting cases). Plaintiff does not challenge the ALJ's properly drawn conclusion that Plaintiff has the RFC to perform simple, repetitive tasks. On that basis, Plaintiff is also capable of performing unskilled work and the ALJ could have utilized the grids at step five, which direct a finding of not disabled.

11

In this case, Plaintiff graduated from high school and attended some college. At the time of the ALJ decision, on February 6, 2012, Plaintiff was 47 years old, a younger individual according to the grids. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h)(1). Previously, Plaintiff worked in at least two semiskilled jobs. Had the ALJ proceeded to a full step-five analysis – as he would have had he not erroneously concluded at step four that Plaintiff could perform her past relevant work – the grids would therefore have directed the conclusion that Plaintiff was not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.21 & 201.22.

The ALJ further developed the record and determined that a substantial number of jobs existed that could be performed by an individual with Plaintiff's limitations. *See Stout v. Commissioner, Social Sec. Admin.,* 454 F.3d 1050, 1054–55 (9th Cir.2006) (harmless error applies in the Social Security context where mistake is inconsequential to the ultimate nondisability determination). Dr. Belchick, the VE, testified that at least one other job – cashier II – is listed as an unskilled SVP 2 job according to the VE. He also testified that a person with Plaintiff's limitations to simple, repetitive tasks could still perform work as a cashier II, which requires only single-item cashiering. Even if the Court were to find that a restriction to simple, repetitive tasks is not fully consistent with the ability to perform unskilled work, the record still contains substantial evidence that Plaintiff retains the ability to perform work which "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c). At the hearing, Dr. Belchick identified the cashier II position as available to a hypothetical person whose RFC exceeded Plaintiff's in requiring the option to change positions from sitting to standing. The VE acknowledged that the DOT classified the job as light exertion, but explained that in practice, the job is actually sedentary to the extent it is performed sitting down. This is a sufficiently reasonable explanation for the conflict with the DOT. *See* SSR 00-4p; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) ("The fact that some jobs listed by the vocational expert as sedentary are also listed as 'light' work in the DOT is irrelevant" because VEs "can testify whether particular applicants for disability benefits would be able to perform

12

subcategories of jobs within the DOT") (quoting *Distasio v. Shalala*, 47 F.3d 348, 350 (9th Cir. 1995)). Collectively, approximately 10,000 of these jobs were available locally and 900,000 were available nationally. *See Gutierrez v. Colvin*, 740 F.3d 519, 527-29 (9th Cir. 2014) (either 2,500 jobs in the State of California or 25,000 jobs nationally is a significant number). Accordingly, both the grids and VE testimony substantively support the ALJ's ultimate disability determination. *Molina*, 674 F.3d at 1115. Since Plaintiff's limitations were comparable to those presented in the cashier II scenario, the VE's testimony serves as substantial evidence supporting the ALJ's conclusion that Plaintiff could perform other work that existed in substantial numbers in the national economy.

Plaintiff's brief fails to challenge the ALJ's conclusion that Plaintiff could perform the work identified by the VE or otherwise challenge what a step-five analysis, and common sense, would dictate. Plaintiff fails to identify any evidence that the ALJ improperly rejected or failed to consider. The Court's own review of the record failed to reveal any evidence that the ALJ improperly disregarded. Although the ALJ erred in its step-four analysis, the error was inconsequential to the ultimate determination because, even if Plaintiff received a favorable determination at step four, the non-disability determination is supported by the ALJ's assessment that Plaintiff could perform work that existed in substantial numbers in the national economy. Thus, the ALJ's error was harmless and Plaintiff's non-disability determination is supported by substantial evidence.

## IV.     Credibility Determination

Plaintiff contends that the ALJ erroneously found her testimony regarding her symptoms less than fully credible. Plaintiff argues that the ALJ should have fully credited her subjective reports concerning the intensity, persistence, and limiting effects of her symptoms, which she alleges are consistent with the overall record.

### A. Plaintiff's Credibility

Before considering medical opinion, the Court finds it relevant to consider Plaintiff's credibility, an important factor in evaluating her claims. The ALJ found that although Plaintiff's

13

reported symptoms were consistent with objective medical evidence, her reports of the intensity, persistence, and limiting effects of her symptoms were not fully credible.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988). He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive. *Orn*, 495 F.3d at 635. *See also Robbins v. Social Security Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between his testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision. *Thomas*, 278 F.3d at 959.

In this case, the ALJ emphasized the insufficiency of the evidence supporting Plaintiff's allegations of total disability. The ALJ noted that while Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's report of their intensity and limiting effects is simply not supported by the objective medical evidence. The ALJ highlighted that, in contrast to her allegations of complete disability, the Plaintiff reported that she remained quite functional. Notably, Plaintiff alleges a disability onset date of early 1995, but all of her work experience comes after that date. Plaintiff reported in her adult function report that her last employment was in 2008 as a home health care provider, despite experiencing symptoms in that time period. According to Plaintiff's work history report dated January 29, 2010, her duties as a home health care provider in 2008 required to physically lift another adult, including: "lift[ing] client up from bathtub or toilet daily," and "lift[ing] client up off of floor when she would fall and put her back on couch." Plaintiff's subjective reports demonstrate that, after her alleged onset date, she continued to work, care for her nephew, perform self-care without assistance, perform household chores, cook meals, shop in stores, go out regularly, handle her finances, and navigate public transportation without assistance. Also, although Plaintiff complained of balance issues – symptoms beyond the historical data in her medical records – there is no evidence of any reports of falls, emergency room treatment, or injuries to support a disability finding on that basis.

Further inconsistencies exist in Plaintiff's claims to the agency when juxtaposed to her representations to her physicians and their objective records. For example, Plaintiff testified that she could only lift 10 pounds, walk only four blocks without difficulty, stand only for a few minutes at a time, and sit for only 20 minutes before needing to stand for five to ten minutes. In contrast, in February 2010, Dr. Van Kirk concluded that Plaintiff could stand and walk for four hours out of an eight hour work day, could sit down to rest every 45 minutes for about five to ten minutes; sit cumulatively six hours in an eight-hour work day, but must get up and move around every 45 minutes for about five minutes; does not need an assistive device; can frequently lift and carry ten

15

pounds and 20 pounds occasionally; and can only occasionally perform postural activities including bending, stooping, crouching, climbing, kneeling, balancing, crawling, pushing, or pulling. Dr. Van Kirk observed that Plaintiff sat comfortably in the examination chair, could rise out of the chair and onto the examination table without difficulty, and walked around the examination room in a normal gait without a limp. Notably absent from the medical records during the relevant time is evidence that Plaintiff reported to her medical providers having had any ambulatory difficulties. Also, in April 2010, x-rays of Plaintiff's right femur and right hip showed "no abnormalities," with the hip joints maintained bilaterally, albeit with internal fixation plate and screws. There is no other imaging evidence in the record.

Plaintiff further contends that side effects from her medications preclude her functioning at the level required to work in any relevant capacity. The ALJ found her claims not credible because her medical records lack documented reports by her medical providers that she experienced side effects from her medications. Further, at her September 2010 mental status examination, Dr. Michiel specifically observed that Plaintiff's attention and concentration were fairly intact, she was able to do simple math calculations, her immediate memory was intact, her short- and long-term memory were only slightly impaired, and her judgment was fairly intact. The ALJ emphasized that at the hearing, he observed that Plaintiff was quite articulate with no problems concentrating. He also noted that Plaintiff testified that she does not usually sleep during the day, but that this contradicted her allegations that she needed to lie down and rest for a total of two hours per day, which often resulted in falling asleep.

Despite Plaintiff's allegations that she is entirely disabled, the medical records reveal only inconsistent and conservative treatment of Plaintiff's condition. The ALJ highlighted that between 1998 and 2008, despite her alleged disability onset in January 1995, Plaintiff was quite capable. More recently, Dr. Flores advised Plaintiff that she should find opportunities to exercise, such as

16

biking and walking.  The corollary to that is, in Dr. Flores's medical opinion, Plaintiff is not disabled.  Indeed, she is physically capable of such exercise.

In short, the record supports the ALJ's conclusion that Plaintiff lacked credibility as to the degree of her functional limitations.  Because of Plaintiff's lack of credibility, every medical opinion presented must be evaluated in light of its dependence on Plaintiff's self-serving representations.  The ALJ properly did so, limiting his reliance on opinions based on Plaintiff's subjective representations of her physical condition.

B.  Expert Medical Opinions

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, a treating physician's opinion is entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nontreating physician.  *Id.*, *see also* 20 C.F.R. § 404.1527; *Orn*, 495 F.3d at 631.  A treating physician is employed to cure and has a greater opportunity to know and observe the patient. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).  Nonetheless, a treating physician's opinion is not conclusive as to either a physical condition or the ultimate issue of disability.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Physicians render two types of opinions in disability cases: (1) clinical medical opinions regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to perform work.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  "An ALJ is not bound by an expert medical opinion on the ultimate question of disability." *Tomasetti*, 533 F.3d at 1041; S.S.R. 96-5p.  The ALJ need not give weight to a conclusory opinion supported by minimal clinical findings.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Magallanes*, 881 F.2d at 751.  An

17

ALJ must determine a claimant's RFC based on "all relevant evidence in the record." *Valentine v. Commissioner of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ must set forth a detailed and thorough factual summary, address conflicting clinical evidence, interpret the evidence and make a finding. *Magallanes*, 881 F.2d at 751-55.

Where a treating or examining physician's opinion is uncontradicted by another doctor, the ALJ must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). The ALJ must tie the objective factors of the record as a whole to the opinions and findings that she rejects. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997).

Plaintiff contends that the ALJ erred by favoring the objective opinions of examining and non-examining physicians, who agree that Plaintiff is not disabled, over Plaintiff's subjective opinion that she is disabled. However, the ALJ carefully analyzed the various expert opinions regarding Plaintiff's RFC, including those of the consultative physician, Dr. Van Kirk, the treating physician, Dr. Flores,[1] and of the non-treating physician, Dr. Michiel, as well as other objective medical records. The ALJ explained in detail his preference for the opinion of the physicians, whose consultative reports contemplated Plaintiff's various symptoms and diagnoses, the objective medical evidence, and her conservative treatment regime. The ALJ appropriately gave weight to these physicians who agreed that Plaintiff was capable of sedentary work.

The ALJ limited the weight he gave to the Plaintiff's opinion since it rested primarily on Plaintiff's own unreliable account of her medical history and her reports of symptoms greater than and inconsistent with the objective medical records. State agency medical consultants reviewed

---

[1] Although Dr. Flores does not explicitly opine on Plaintiff's ability to work, the Court notes Dr. Flores's opinion that Plaintiff is capable of climbing stairs, riding a bicycle, and walking for exercise, and infers that his opinion is that Plaintiff is not disabled, consistent with that of the other consultative physicians.

18

Plaintiff's medical records and all agreed that her impairments were not severe. The ALJ gave substantial weight to the State agency consultants' opinions because their conclusions were consistent with the longitudinal medical evidence.

This Court agrees with the ALJ's analysis. The ALJ did not fully credit Plaintiff's testimony as to the extent and limitations of her symptoms on the basis that she was not only contradicted by both the consultative and state agency physicians, but also by her reports to medical providers and her testimony at the hearing. This Court concludes that substantial evidence supported the ALJ's determination to favor the opinions of the doctors and the entirety of the objective medical records, and to reject the severity of Plaintiff's self-serving opinion. Since the ALJ gave well-articulated "specific and legitimate" reasons for not fully crediting Plaintiff's subjective reports, and those reasons were supported by substantial evidence in the record, the ALJ did not err in his assessment of the relative credibility of Plaintiff, nor in his decision to favor the opinion of the majority of the physicians over that of Plaintiff.

## V.  Conclusion and Order

The Court finds that the ALJ applied appropriate legal standards and that substantial evidence supported the ALJ's determination that Plaintiff was not disabled. Accordingly, the Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

Dated:   **August 13, 2014**              **/s/ Sandra M. Snyder**
                                          UNITED STATES MAGISTRATE JUDGE